UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 16-00624-JVS (KESx) | Date | August 1, 2016 |
| Title | AirHawk International, LLC v. TheRealCraigJ, LLC et al. | | |

Present: The Honorable James V. Selna

| | |
|---|---|
| Ivette Gomez | Not Present |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) **Order DENYING in Substantial Part Motion to Dismiss**

Defendants TheRealCraigJ, LLC and Craig Johnson (collectively, the "Johnson Defendants") filed a Rule 12(b)(6) motion to dismiss Plaintiff AirHawk International, LLC's ("AirHawk") complaint for failure to state a claim. Mot. Dismiss Compl. Filed By Pl. AirHawk, Docket No. 18 ("Mot. Dismiss"). AirHawk filed an opposition. Pl. AirHawk's Opp'n Defs.' Mot. Dismiss Under Rule 12(b)(6), Docket No. 27 ("Pl.'s Opp'n"). The Johnson Defendants filed a reply. Reply Supp. Mot. Dismiss Compl. Filed By Pl. AirHawk Under Rule 12(b)(6), Docket No. 28 ("Reply Supp. Mot. Dismiss").

For the following reasons, the Court **denies in substantial part** the Johnson Defendants' motion to dismiss.

## 1. Background[1]

AirHawk is a California limited-liability company that designs, manufactures, and sells motorcycle-seat cushions featuring air-cushion technology made of small, interconnected air cells. Compl., Docket No. 1 ¶¶ 14–16. AirHawk's product line was first developed by The ROHO Group ("Roho"), and then letter acquired by High End Seating Solutions in 2011. Id. ¶¶ 17, 24. AirHawk owns design patents for three of its motorcycle-seat cushions, including, as relevant here, U.S. Design Patents No. D673,785, D672,569, and D658,396. Id. ¶¶ 27–28, 31, 34.

TheRealCraigJ, LLC is a Minnesota limited-liability company doing business as

[1] Except where otherwise noted, the following background is based solely on the allegations in AirHawk's complaint.

"Wild Ass." Id. ¶ 7. Wild Ass was founded by Defendants Johnson and Scott Parman ("Parman"). Id. ¶ 37. Johnson was formerly Roho's North American Sales Manager for AirHawk products, and was intimately familiar with AirHawk's motorcycle-seat cushion business. Id. ¶¶ 37, 54.

In January 2016, Wild Ass announced three new product lines of motorcycle-seat cushions. Id. ¶ 40. AirHawk alleges that these cushions infringe AirHawk's motorcycle-seat cushion patents. Id. ¶¶ 80, 86, 92. AirHawk further alleges that, after the launch of Wild Ass's motorcycle-seat cushions, the Johnson Defendants planned to steal business from key AirHawk distributors and resellers, including Tucker Rocky Distributing. Id. ¶ 56. Tucker Rocky Distributing was once a key AirHawk customer, but now carries Wild Ass's product line. Id. ¶¶ 58–59.

AirHawk further alleges that the Johnson Defendants' marketing materials for their motorcycle-seat cushion products falsely and deceptively advertise both that its products were "designed using clinically proven medical seating technology" and that they have medical and therapeutic benefits (e.g., reduces lower back pain). Id. ¶¶ 69–70, 74. AirHawk alleges that the advertisements are designed to fraudulently entice consumers, distributors, and resellers to purchase Wild Ass products over AirHawk's products and, as a result, have harmed AirHawk's business. Id. ¶¶ 75, 77–78.

On April 4, 2016, AirHawk filed a complaint in this Court against the Johnson Defendants alleging (1) direct patent infringement of U.S. Patent Nos. D673,785, D672,569, D658,396 under 35 U.S.C. § 271; (2) false advertising in violation of the federal Lanham Act, 15 U.S.C. § 1125(a); (3) false advertising in violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500; (4) common law tortious interference; and (5) unfair competition in violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq. Compl. ¶¶ 79–137. AirHawk has since voluntarily dismissed the FAL claim. Pl.'s Voluntary Dismissal, Docket No. 17.

The Johnson Defendants now move to dismiss the remaining causes of action for failure to state a claim under Rule 12(b)(6).

## 2. Legal Standard

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To overcome a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Fraud claims require more. See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Under Rule 9(b)'s heightened pleading requirements, the plaintiff must plead the "who, what, when, where, and how" of the alleged fraud. Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997).

In resolving a 12(b)(6) motion under Twombly, the Court must follow a two-pronged approach. First, the Court must accept all well-pleaded factual allegations as true. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Moreover, at this step, the Court is not required to "'accept as true a legal conclusion couched as a factual allegation.'" Id. at 678–80. (quoting Twombly, 550 U.S. at 555). Second, and assuming the well-pleaded factual allegations are true, the Court must "determine whether they plausibly give rise to an entitlement to relief." Id. at 679. This determination is context-specific, requiring the Court to draw on its experience and common sense. There is no plausibility, however, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id.

## 3. Analysis

### 3.1 Direct patent infringement

The Johnson Defendants argue that AirHawk fails to state a claim for patent infringement because the complaint does not plausibly allege patent infringement under Iqbal and Twombly. Mot. Dismiss at 23-28.

Typically, district courts within the Ninth Circuit apply the "ordinary observer" test to determine whether the plaintiff has adequately alleged patent infringement. Performance Designed Prods. LLC v. Mad Catz, Inc., No. 16-cv-0629, 2016 WL

3552063 (S.D. Cal. June 29, 2016); SCG Characters LLC v. Telebrands Corp., No. 25-cv-0374, 2015 WL 4624200 (C.D. Cal. Aug. 3 2015); Dioptics Med. Prods., Inc. v. IdeaVillage Prods. Corp., No. 8-cv-3538, 2010 WL 4393876 (N.D. Cal. Oct. 29, 2010); see also P.S. Products, Inc. v. Activision Blizzard, Inc., 140 F. Supp. 3d 795 (E.D. Ark. 2014); Kellman v. Coca-Cola Co., 280 F. Supp. 2d 670 (E.D. Mich. 2003). Under the ordinary observer test, courts will find infringement of a design patent "[i]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, . . . inducing him to purchase one supposing it to be the other." Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 670 (Fed. Cir. 2008) (quoting Gorham Co. v. White, 81 U.S. 511, 528 (1871)); see OddzOn Prods., Inc. v. Just Toys, Inc., 122 F.3d 1396, 1405 (Fed. Cir. 1997) ("The patented and accused designs do not have to be identical in order for design patent infringement to be found."). When determining whether two designs are same or different, "[d]ifferences . . . must be evaluated in the context of the claimed design as a whole, and not in the context of separate elements in isolation." Ethicon Endo-Surgery v. Covidien, Inc., 796 F.3d 1312, 1335 (Fed. Cir. 2015).

The Court finds that the designs as a whole are substantially similar, and thus dismissal of the patent infringement claims is not warranted at this stage. The side-by-side comparisons show that the overall shape of the patented and allegedly infringing products are identical. See Compl. ¶¶ 51–53. Moreover, both the patented products and the allegedly infringing products both consist of smaller air-cells covering the entire surface of the cushion. Though the number and shape of the air-cells differ between the patented designs and accused products, these differences are slight given the significant overall visual impression of the cushions. Given the substantial visual similarities between the designs, an ordinary observer could plausibly find the designs substantially similar, and thus be induced to mistakenly purchase the allegedly infringing product. Accordingly, the Johnson Defendants have not shown that the designs could not be found to be substantially similar, and thus have not shown that AirHawk's patent infringement claims are implausible. To the extent that the patents contain functional as well as ornamental features, this inquiry raises questions of fact that are not appropriate at the pleading stage. See PHG Techs., LLC v. St. John Companies, Inc., 469 F.3d 1361, 1365 (Fed. Cir. 2006) ("Whether a patented design is functional or ornamental is a question of fact."); OddzOn Prods., Inc. v. Just Toys, Inc., 122 F.3d 1396, 1405 (Fed. Cir. 1997) ("Design patent infringement is a question of fact, which a patentee must prove by a

preponderance of the evidence.”). Accordingly, the Court denies the Johnson Defendants’ motion to dismiss the patent infringement claims.

### 3.2 False advertising in violation of the Lanham Act

The Johnson Defendants argue that AirHawk’s fourth cause of action for false advertising in violation of the Lanham Act should be dismissed for three independent reasons: (1) AirHawk failed to sufficiently allege that the advertisements are false; (2) even if false, the statements are non-actionable puffery; and (3) AirHawk failed to plead its claim with particularity under Rule 9(b). Mot. Dismiss at 15–22. The Court rejects each argument.

#### 3.2.1 Sufficiency of the pleading

To state a claim for false advertising under the Lanham Act, 15 U.S.C. § 1125(a), the plaintiff must allege, among other things, “a false statement of fact by the defendant in a commercial advertisement about its own or another’s product.” Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997). The Johnson Defendants argue that AirHawk has not alleged the first element of a false advertising claim under the Lanham Act: a false statement of fact. Mot. Dismiss at 16. The Court disagrees.

“To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers.” Southland Sod Farms, 108 F.3d at1139 (citing Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 946 (3d Cir. 1993)). Here, Wild Ass’s advertisements state that its products use “clinically proven medical seating technology” and have both medical and therapeutic benefits (e.g., reduce lower back pain). Compl. ¶ 69. However, AirHawk alleges that these statements are false and misleading because (1) the statement “clinically proven” misleadingly implies that the products themselves have been clinically test, which is not true and (2) the products in fact do not provide the claimed medical and therapeutic benefits. Id. ¶¶ 70, 74. This is sufficient to allege that Wild Ass’s advertisements made false or misleading statements of fact about Wild Ass products.

#### 3.2.2 Non-actionable puffery

Courts may dismiss claims for false advertising under the Lanham Act when the allegedly false advertisements constitute non-actionable puffery. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc., 911 F.2d 242, 245 (9th Cir. 1990). An advertisement constitutes puffery when the statement is a generalized, vague, and unspecific assertion regarding the advertised product. Glen Holly Entm't, Inc. v. Tektronix, Inc., 352 F.3d 367, 379 (9th Cir. 2003). Moreover, even particular terms will constitute puffery when the terms have "no concrete, discernable meaning" within the context of the statements. Viggiano v. Hansen Nat. Corp., 944 F. Supp. 2d 877, 894 (C.D. Cal. 2013). One touchstone for puffery analysis under this standard is consumer reliance. A "common theme" in "cases considering puffery . . . is that consumer reliance will be induced by specific rather than general assertions." Cook, 911 F.2d at 246.

The Johnson Defendants argue that Wild Ass's advertising statements constitute mere "puffery" or opinion. Mot. Dismiss at 21. The Court disagrees in part. In its advertisements, Wild Ass states that its products use "clinically proven" medical technology. Compl. ¶ 69. This statement is a specific statement of fact that is not vague, subjective, or generalized. Wild Ass's advertisements also identify specific health benefits, including the reduction of "lower back pain" and "increase[d] blood circulation." Id. These statements are sufficiently specific to induce consumer reliance. Accordingly, these statements are not non-actionable puffery for purposes of the Lanham Act.

In its advertisements, Wild Ass also states that its products "eliminate[] *painful* pressure points" and "promote[] *proper* circulation." Id. ¶ 69 (emphases added). These statements are subjective opinion. The terms "painful" and "proper" are not falsifiable statements of fact. Rather, the terms "painful" and "proper" are subjective terms whose meaning varies from person-to-person. Because these phrases are subjective, they are non-actionable under the Lanham Act. Lipton v. Nature Co., 71 F.3d 464, 474 (2d Cir. 1995) ("Subjective claims about products, which cannot be proven either true or false, are not actionable under the Lanham Act."). Accordingly, the Court dismisses AirHawk's false advertising claims to the extent they challenge Wild Ass's representations regarding "painful pressure points" and "proper circulation."

3.2.3 Particularity requirement under Rule 9(b)

The Johnson Defendants argue that AirHawk failed to plead its false advertising claim with particularity under Federal Rule of Civil Procedure 9(b). Mot. Dismiss at 21–22. The Court disagrees. “Although the Ninth Circuit has not concluded that Rule 9(b) applies to Lanham Act claims, many district courts have applied [the Rule 9(b)] heightened pleading standard to claims that are grounded in fraud, such as misrepresentation of claims.” EcoDisc Technology AG v. DVD Format/Logo Licensing Corp, 711 F. Supp. 2d 1074, 1085 (C.D. Cal. 2010). Here, AirHawk’s false advertising claim is grounded in fraud because AirHawk’s allegations are based on the Johnson Defendants’ alleged misrepresentations in Wild Ass advertisements. Compl. ¶¶ 71, 74. Rule 9(b) therefore applies to AirHawk’s false advertising claims.

To satisfy Rule 9(b), the plaintiff must “state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.” Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986). Furthermore, “[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false.” In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994). Here, AirHawk has satisfied the heightened pleading standard of Rule 9(b). AirHawk has alleged who committed the alleged misrepresentations: the Johnson Defendants and Parman; what the purported misconduct was: the Johnson Defendants’ misrepresentations that its products use “clinically proven” medical technology and have medical and therapeutic benefits; where the alleged misrepresentations occurred: in marketing materials, including a Wild Ass brochure; and when the alleged misrepresentations were made: at the inception of Wild Ass’s new product line in January 2016. Compl. ¶¶ 40, 59, 68–69. Moreover, AirHawk alleges why the statement is false or misleading: the statement “clinically proven” misleadingly implies both that the products themselves have been clinically tested and that the products provide the purported medical and therapeutic benefits. Id. ¶¶ 70, 74.

For the above reasons, the Court finds that, with the exception of the claims based on pressure points and circulation, AirHawk has sufficiently alleged a plausible claim for false advertising. Accordingly, the Court denies in substantial part the Johnson Defendants’ motion to dismiss as to AirHawk’s seventh cause of action for false advertising under the Lanham Act.

### 3.3 California’s Unfair Competition Law

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Here, AirHawk's UCL claims are predicated on the Johnson Defendants' alleged false advertising. Compl. ¶¶ 127–28. When evaluating false advertising claims under the UCL, the court must evaluate the advertisements from the vantage of a "reasonable consumer." Williams v. Gerber Prods. Co., 552 F.3d 934, 938–39 (9th Cir. 2008). Under the reasonable consumer standard, the plaintiff must allege that members of the public are likely to be deceived by the defendant's alleged false advertising. Id. at 938. This requires the plaintiff to show that the advertisement is (1) false, (2) actually misleads the public, or (3) has the capacity, likelihood, or tendency to deceive or confuse the public. Id.

AirHawk has adequately alleged violation of the UCL. In practice, because the standard for false advertising under the UCL is substantially identical to the standard for false advertising under the Lanham Act, claims of false advertising under the UCL are "substantially congruent to claims made under the Lanham Act." Walker & Zanger, Inc. v. Paragon Indus., Inc., 549 F. Supp. 2d 1168, 1182 (N.D. Cal. 2007). Here, AirHawk has adequately alleged false advertising in violation of the Lanham Act. Accordingly, for the same reasons discussed *supra*, AirHawk has also adequately alleged violation of the UCL. The Court therefore denies the Johnson Defendants' motion to dismiss the UCL claim.

3.4 Tortious interference

AirHawk's sixth cause of action alleges tortious interference. Although the allegations in the complaint imply that AirHawk is alleging intentional interference with prospective economic advantage, Compl. ¶¶ 115-24, AirHawk's opposition brief recites the standard for intentional interference with contract. Pl.'s Opp'n at 19. In California, these claims are different. See United Nat. Maint. v. San Diego Convention Ctr., Inc., 766 F.3d 1002, 1008 (9th Cir. 2014) ("[Kasparian v. Cty. of Los Angeles, 38 Cal. App. 4th 242 (1995)] only addressed 'intentional interference with prospective economic advantage,' . . . a different tort from the 'intentional interference with contract' at issue here."). However, because the Court must "construe the pleadings in the light most favorable to the nonmoving party," on motion to dismiss, the Court will analyze both theories of tortious interference to determine whether dismissal is appropriate here. Ass'n for L.A. Deputy Sheriffs v. Cty. of Los Angeles, 648 F.3d 986, 991 (9th Cir. 2011) (quoting Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005)).

3.4.1 Intentional interference with contract

To state a claim for intentional interference with contract under California law, the plaintiff must allege: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional act designed to induce a breach of disruption of the contractual relationship; (4) actual breach of disruption of the contractual relationship; and (5) resulting damage. Pac. Gas & Elec. Co. v. Bear Stearns & Co., 50 Cal. 3d 1118, 1126 (1990).

Here, AirHawk fails to allege the existence of a valid contract with a third party. Although the complaint refers to AirHawk's prospective "economic relationships with its distributors and reseller customers," this allegation fails to establish that AirHawk held valid contracts with its distributors and reseller customers at the time of interference. Id. ¶ 116. AirHawk therefore has failed to allege intentional interference with contract. Moreover, at the hearing, AirHawk conceded that it will not be proceeding on an intentional interference with contract theory, and will instead proceed only on an intentional interference with prospective economic advantage theory.

3.4.2 Intentional interference with prospective economic advantage

To state a claim for interference with prospective economic advantage under California law, the plaintiff must allege: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant. TransWorld Airlines, Inc. v. Am. Coupon Exch., Inc., 913 F.2d 676, 689 (9th Cir. 1990). To satisfy the third element regarding intentional disruption, the plaintiff must allege that the defendant "engaged in conduct that was wrongful by some measure other than the fact of interference itself." Hsu v. OZ Optics, Ltd., 211 F.R.D. 615, 620 (N.D. Cal. 2002) (citing Della Penna v. Toyota Motor Sales, USA, Inc., 11 Cal. 4th 376, 393 (1995)).

AirHawk has sufficiently alleged intentional interference with prospective economic advantage. AirHawk alleges that (1) AirHawk had prospective economic

relationships with distributors and resellers such as Tucker Rocky Distributing;[2] (2) the Johnson Defendants knew about these relationships because Johnson and Parman, as former managers of Roho's AirHawk sales team, had extensive knowledge of Roho's AirHawk distributors and resellers; (3) the Johnson Defendants engaged in false advertisement and patent infringement designed to disrupt these relationships; (4) the Johnson Defendants disrupted these relationships, most notably AirHawk's relationship with Tucker Rocky Distributing;[3] and (5) after Wild Ass introduced its competing product line, AirHawk's purchase orders decreased substantially, and thus AirHawk has been damaged. Compl. ¶¶ 54, 58–59, 62, 116–20, 122. These allegations are sufficient to allege intentional interference with prospective economic advantage. Accordingly, the Court denies the Johnson Defendants' motion to dismiss the sixth cause of action for tortious interference.

3.5 Individual claims against Johnson

Lastly, the Johnson Defendants argue that AirHawk fails to state a claim against Johnson individually. The Court disagrees. "A corporate 'officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf.'" Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1021 (9th Cir. 1985). Here, AirHawk specifically alleges that Johnson, as founder of Wild Ass, (1) was the "moving, active, conscious force behind [Wild Ass's] infringing activity;" (2) participated in the infringing activity by "contact[ing] another former Roho employee to request advice about how to circumvent AirHawk's patents;" and (3) is "directly responsible for creating Wild Ass's marketing . . . and the intentional false and misleading statements." Compl. ¶¶ 55, 64, 71. These allegations sufficiently allege that

[2] Specifically, AirHawk alleges that "Tucker Rocky Distributing was a key AirHawk customer." Compl. ¶ 58. Construing all reasonable inferences in favor of AirHawk, Knievel, 393 F.3d at 1072, the Court finds that these allegations are sufficient to allege the existence of a prospective economic relationship.

[3] Specifically, AirHawk alleges that "Tucker Rocky Distributing was a key AirHawk customer," "[b]ut following the . . . launch of Wild Ass, MAG announced that Tucker Rocky would carry the Wild Ass product line." Id. ¶¶ 58–59. Construing all reasonable inferences in favor of the plaintiff, Knievel, 393 F.3d at 1072, the Court finds that these allegations are sufficient to allege actual disruption.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 16-00624-JVS (KESx) | Date | August 1, 2016 |
| Title | AirHawk International, LLC v. TheRealCraigJ, LLC et al. | | |

Johnson has "authorize[d]," "direct[ed]," or "participate[d]" in Wild Ass's alleged patent infringement and false advertising. Transgo, Inc., 768 F.2d at 1021. Accordingly, AirHawk has sufficiently alleged claims against Johnson individually. The Court therefore denies the Johnson Defendants' motion to dismiss Johnson as an individual defendant.

## 4. Conclusion

For the reasons stated above, the Court **denies in substantial part** the Johnson Defendants' Rule 12(b)(6) motion to dismiss. The Court **grants** the Johnson Defendants' Rule 12(b)(6) motion to dismiss only with respect to certain terms in the Lanham Act claim and the claim for tortious interference to the extent the claim is based on interference with contract. The dismissal is with prejudice.

IT IS SO ORDERED.

0 : 34

Initials of Preparer ig for kjt